Ann WASHINGTON, Appellant,

v.

**CITY OF WINCHESTER,
Kentucky, Appellee.**

No. 95–CA–1775–MR.

Court of Appeals of Kentucky.

Feb. 14, 1997.

Benjamin J. Hays, Winchester, for appellant.

James W. Clay, Winchester, for appellee.

Before BUCKINGHAM, HUDDLESTON, and SCHRODER, JJ.

## OPINION

SCHRODER, Judge:

The initial facts of this case are well known to the parties and to the Court as a result of the first appeal in this same matter. *Washington v. City of Winchester*, Ky.App., 861 S.W.2d 125 (1993). On remand, the appellant was given a reasonable time to repair or demolish the structure. Appellant ultimately declined to make necessary repairs and the structure was demolished. Appellant was permitted to amend her complaint to allege damages for violation of her Kentucky Constitutional rights. The gist of the claim appears to be for deprivation of the use of the property during the appeal, and for the increase in the cost of repairs as a result of the appeal. The trial court granted appellee's motion to dismiss for failure to state a claim under CR 12.02(f), and in the alternative, granted summary judgment under CR 56.02.

On appeal, appellant contends the appellee committed some sort of inverse condemnation by regulations which barred the property owner from using (renting) the property. Appellant is attempting to read something into the first case which isn't there. Indeed, we specifically held on page 127 of our opinion that a city *could* "[e]nforce reasonable housing codes such as the BOCA Basic Property Maintenance Code of a certain year, for the protection of the public health and welfare." We also stated in the next sentence that "[t]he cost of such compliance is a property owner's problem, ..." *Id.* at 127. The only part of the housing code that we found unconstitutional was the failure to give the property owner a reasonable time to make repairs (at the owner's cost, whatever it may be) *before* ordering demolition, if there was failure to make repairs. The building was vacant not because of the demolition order, but because of the earlier condemnation order and placarding of the building, which was done properly according to the law of the case. *Board of Trustees of University Of Kentucky v. Hayse*, Ky., 782 S.W.2d 609 (1989), *cert. denied* by *Hayse v. Board of Trustees of University of Kentucky*, 497 U.S. 1025, 110 S.Ct. 3273, 111 L.Ed.2d 783 (U.S.Ky.1990) and *Board of Trustees of University of Kentucky v. Hayse*, 498 U.S. 938, 111 S.Ct. 341, 112 L.Ed.2d 306 (U.S.Ky.1990).

If the appellant suffered any damages as a result of the appellee's actions, we would have to ask: If the appellee had allowed the appellant to make the repairs back then, would the appellant have made the repairs, and if she did repair the building, when would the repairs have been completed and the building rented out? What would the costs of repairs have been then versus after the appeal process? Appellant is not only asking us to speculate as to damages but to transgress into an area that, by law, we don't need to enter. Before we can award any damages we need a theory for liability. Appellant's 1983[1] allegations were previously dismissed and not appealed, leaving a claim for what—a tort for improper inspection and enforcement of the housing code? We think not. In *Bolden v. City of Covington*, Ky., 803 S.W.2d 577 (1991), Justice Leibson, in writing for the Court, stated that:

[L]egal liability flowing from the existence of these fire and safety violations rests on the owner or other person in possession and control of the building. The duties assigned by the ordinances to the Director and city inspectors are to find or confirm violations, and to decide what needs to be done, whether repairs or placarding the building. The judicial nature of these decisions is underscored by the fact that there are avenues of appeal from the decision of the Director to a reviewing authority and to the courts. There is no more legal liability in this situation for the City than there would be where a judge fails to make a decision or makes a wrong one.

*Id.* at 581.

and

..., not because the City enjoys immunity from tort liability, but because the incompetent performance of decision-making activity of this nature by a governmental agency is not the subject of tort liability.

*Id.*

Without a theory of liability, the trial court had no alternative but to dismiss. CR

---

1. 42 U.S. § 1983.

12.02(f) permits a dismissal for "[f]ailure to state a claim upon which relief can be granted ..." upon motion before a responsive pleading is filed or upon motion after the answer or reply is filed. It is treated as a motion for summary judgment under CR 56. The standard for summary judgment in the Commonwealth is governed by the case of *Steelvest, Inc. v. Scansteel Service Center, Inc.*, Ky., 807 S.W.2d 476 (1991) which adopted the *Paintsville Hospital Co. v. Rose*, Ky., 683 S.W.2d 255 (1985) standard. *Paintsville Hospital* mandated that summary judgment should only be used to terminate litigation when, as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor against the movant. Under the facts and the law of this case as presented, it would be impossible for the appellant to recover damages from appellee. Therefore, the trial court was correct in granting the appellee summary judgment.

For the foregoing reasons, the judgment of the Clark Circuit Court is affirmed.

All concur.